O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHU VAN TA,<br><br>Petitioner,<br>v.<br><br>KRISTI NOEM, SECRETARY OF HOMELAND SECURITY, et al.,<br><br>Respondents. | Case No.: 5:25-cv-02902-MEMF-JDE<br><br>**ORDER GRANTING IN PART PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER [DKT. NO. 3]** |

Before the Court is the Motion for Preliminary Injunction and a Temporary Restraining Order filed by Petitioner Phu Van Ta. Dkt. No. 3. For the reasons stated herein, the Motion is GRANTED IN PART.

/ / /

/ / /

/ / /

/ / /

I. **Background**

A. **Factual Background**[1]

On October 12, 1984, Ta entered the United States from Vietnam, as a refugee from the Vietnam War. Petition at 6. He was admitted to the United States as a legal permanent resident. *Id.* At the time, Ta was nine years old. *Id.* He has never left the United States. *Id.* at 7. His mother, wife, and children are all U.S. citizens. *Id.* He is the primary caregiver for his mother, who is eighty-five years old.

In 2010, Ta was convicted under violations of California Health and Safety Code, section 11358, which prohibits the planting, harvesting, or processing of cannabis. *Id.* In 2011, the Los Angeles Immigration Court determined that those convictions were offenses relating to a controlled substance and aggravated felonies. *Id.* The Court ordered that Ta be removed to Vietnam. *Id.* He did not appeal because, at the time, Vietnamese refugees were not being deported. *Id.* at 7–8.

Ta spent seven months in ICE detention in connection with the Immigration Court proceedings. *Id.* at 8. After that, Ta was informed that he was being released because the government had been unable to remove him to Vietnam during the legally required period. *Id.* He was subsequently released. *Id.* He is not aware of any other steps taking towards his removal, or any other basis for his removal. *Id.* In compliance with his supervision requirements, Ta has regularly checked in as required at ICE offices since 2011. *Id.*

In 2025, Ta became aware that he could challenge his 2010 convictions—the basis for his removal order—as invalid under California Penal Code section 1473.7(a)(1). *Id.* On his motion under that provision, the Superior Court vacated those convictions on July 28, 2025. *Id.*

On September 23, 2025, Ta reported to his required weekly check-in at the ICE office in Santa Maria. *Id.* at 9. Upon his arrival, he was informed that ICE would be taking him into custody effective immediately. *Id.* ICE did not give him prior notice, cite new circumstances that justified his

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

redetention, or provide new information that suggested that his removal to Vietnam was now more likely or imminent. *Id.* ICE did not specify to what country he was to be removed. *Id.* at 10.

### B. Procedural History

On October 31, 2025, Ta filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See generally* Petition. On the same day, Ta filed this Motion. On November 7, the Government filed its opposition. Dkt. No 9 ("Opp."). On November 8, Ta filed his Reply. Dkt. No. 10 ("Reply").

This Court held a hearing on the Motion on Monday, November 10, 2025. Having been heard on the question of service on the Government, Government counsel submitted on the Court's tentative. Ta's counsel clarified that Ta does not assert he has been detained beyond six months, and otherwise submitted on the tentative.

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Government to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this

section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. Discussion

#### A. Ta's Motion is not procedurally improper.

As a threshold matter, the Government argues that Ta's motion is procedurally improper. Opp. at 4. It cites Local Rule 7-3, and this Court's reiteration of it in its Civil Standing Order, which indicates that counsel contemplating the filing of any motion must generally contact opposing counsel to discuss the substance of the contemplated motion and any potential resolution. It notes that Ta did not meet and confer with the Government, and that the Government only became aware of the lawsuit at 10:42 AM on November 7—the day that this Court instructed the Government to file its opposition. It argues that, for that reason, "this Court can and should strike the Motion in its entirety." *Id.* at 4–5.

Local Rule 7-3 requires counsel "[i]n all cases not listed as exempt in L.R. 16-12" to contact opposing counsel to "discuss thoroughly . . . the substance of the contemplated motion and any potential resolution." L.R. 7-3. Once that has occurred, if the parties are unable to reach a resolution that eliminated the need for the motion, the motion must include a declaration explaining when the L.R. 7-3 conference took place and the position of each party. *Id.* But, as Ta's Reply notes, the exemptions list includes "[p]etitions filed under 28 U.S.C § 2241 *et seq.* or their functional equivalents." L.R. 16-12. And the petition for habeas corpus was made "under 28 U.S.C. § 2241." Petition at 1. For that reason, this Court interprets the Local Rules to exempt this case from the standard meet-and-confer requirement, and finds that Ta's Motion appears to be in compliance with the Local Rules.

The Government next argues that the Motion was "essentially filed on an ex parte basis," and out of compliance with the relevant Local Rule for that reason. It is true that this District's Local Rules require ex parte applications to include the contact information for the opposing party, as well as a declaration of the movant's efforts to contact other counsel. L.R. 7-19.1. But—as stated above—this is not an ex parte application, making this rule is inapplicable.

In addition, the Government argues that it was never properly served with the Petition or the Motion. Based upon the discussion at the hearing, it appears to the Court that this was not any deliberate effort on the part of Petitioner's counsel, but based upon a misreading or misunderstanding of the applicable local rules under the considerable time pressure faced by counsel. The Court is satisfied that this error will not be repeated as counsel advised that his office has now amended their procedures to avoid this in the future. Counsel for Petitioner is admonished to ensure that all future service requirements are fully met.

Finally, the Court notes that the Government has not requested additional time to file its Opposition, and it appears to have been able to file a fulsome response despite the short time frame.

Accordingly, the Court does not find procedural defects with the Motion that warrant denial on that basis and will next turn to the merits of the Motion.

### B. Applying the *Winter* factors, Ta is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Ta is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition advances four grounds upon which a temporary restraining order should be granted: First, Ta argues that there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future. Petition at 11. Second, he argues that Respondents have violated due process and INA regulations by redetaining him without notice and an opportunity to be heard. *Id.* at

14. Third, he argues that his removal to any third country would violate due process because ICE has given him neither notice of the proposed third country nor an opportunity to request deferral or withholding of removal. *Id.* at 16. Fourth, he argues that removal to third countries where Ta might face imprisonment violates the constitutional prohibition on "punitive" removal practices. *Id.* at 18.

The final two grounds—challenging third country removal as a due process violation and an impermissibly punitive removal measure—concern the question of whether Ta's removal to any *third country* would be proper. It is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). And, as Respondents note, "there is no evidence that the government has not taken steps to effectuate his removal to *Vietnam*," Ta's home country and the country of removal specified in his order of removal. Opp. at 11 (emphasis added). Ta's Reply appears to concede the uncertainty in his premise of third-party country removal. Reply at 5 ("Ta alleges that his removal to any third country *would* violate due process." (emphasis added)). On the current record, the possibility of removal to a third country is speculative, and therefore Ta cannot show the requisite likelihood of irreparable harm (the second *Winter* factor). Thus, Ta is not entitled to a temporary restraining order on either of these two grounds. The Court will proceed to consider the other two grounds advanced.

Those remaining two grounds are as follows: (1) Ta's continued detention is unlawful because there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future, and (2) Ta's continued detention is unlawful because Respondents redetained him without notice or an opportunity to be heard. The Court addresses these grounds below.

    i. <u>The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.</u>

        1. *Ta has demonstrated a likelihood of success on the merits of his claim that his detention is unlawful because there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future.*

The parties dispute how to apply the *Zadvydas* framework to Ta's continued detention: Ta argues that the Court should find that the Government must rebut his showing that his deportation is

likely not in the reasonably foreseeable future.[2] Respondents, on the other hand, argue that the *Zadvydas* clock restarted on Ta's latest detention, and that Ta has failed to make the required showing. The parties do not cite to any binding authority, and this Court is not aware of any, that addresses how to apply the *Zadvydas* framework to a redetention.

      The Court finds that to apply the *Zadvydas* framework in the way Respondents propose under these facts would be contrary to the reasoning of *Zadvydas* and produce anomalous results. The question in *Zadvydas* concerned the constitutionality of indefinite or prolonged detention. 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits a [non-citizen's] post-removal-period detention to a period reasonably necessary to bring about that [non-citizen's] removal from the United States. It does not permit indefinite detention."). The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*. Another district court in this Circuit's approach is instructive here: It considered and rejected the Government's argument that "because [the petitioner's] detention was not consecutive, the clock has restarted." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (collecting similar cases). Rather, it appears that Section 241.13 actually codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

---

[2] At the hearing, counsel for the Petitioner explained that the six-month presumptive period is scheduled to run in December.

8

8 U.S.C. § 241.13(a) (emphasis added).³ This therefore indicates that the subsection Ta relies upon—241.13(i)(2)—only applies where the noncitizen has made the showing of "good reason to believe." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Ta has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, noting the current arrangement with Vietnam, the paucity of removals to Vietnam, and the absence of any indication that the Government is seeking to meet the conditions of the current arrangement with Vietnam. The burden would therefore shift to the Government, even in the absence of the *Zadvydas* presumption. The Respondents respond that (1) there is no bar to removal to Vietnam, Opp. at 7, (2) one individual was removed to Vietnam earlier this year, *id.*, and (3) "the government has taken steps to effectuate his removal to his country of origin in the foreseeable future." *Id.* at 12. Respondents' assertion regarding the steps it has taken is notably without detail or factual support, even though presumably, the Government should be able to describe the steps taken and provide the Court with a declaration by an appropriate individual attesting to those steps. Without this, the Court is unable to conclude that it is at all likely that the Government will be able to remove Ta in the reasonably foreseeable future. The Court therefore finds that Ta is likely to succeed in showing that the Government has not rebutted his showing.

This Court thus finds that Ta has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas*.

---

³ Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

> 2. *Ta has demonstrated a likelihood of success on the merits of his claim that his detention is unlawful because the Government did not provide him with notice and an opportunity to be heard.*

This Court next turns to Ta's second ground. Ta argues that he is "entitled to release because the Government violated both due process and INA regulations by re-detaining him without notice and an opportunity to be heard." Petition at 14. For the reasons below, this Court finds he is likely to succeed on the merits of this claim.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Importantly, the Respondents do not meaningfully dispute that Ta has the right to notice and the opportunity to be heard on his redetention, consistent with the applicable regulations. Instead, it focuses on the fact that the retention decision is discretionary. Opp. at 8 (citing *Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir. 2009)). Be that as it may, this does not mean that Ta does not have the right to notice and the opportunity to be heard on this discretionary decision. And perhaps more importantly, the Government fails to justify why it should be permitted to exercise its discretion under the regulation in a way to contravenes the requirement of the same regulation to provide notice and an opportunity to be heard. In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the due process rights of putative detainees. The Government provides no reason this Court should find otherwise, and this Court declines to take the extraordinary position that these individuals are not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. This Court therefore finds that Ta is likely to succeed on the merits of his claim that detention is only permitted upon notice and an opportunity to be heard.

This Court's conclusion is consistent with that of other district courts. *See* Reply at 2–3 (collecting cases). Particularly instructive is the Court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. In *McSweeney*, it appears that the petitioner had received more notice than Ta has in this case; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

The cases cited by the Government are inapposite. In *Long Ton v. Noem*, No. 5:25-CV-02033, 2025 WL 2995068, at *1 (C.D. Cal. Sep. 3, 2025), the Court was apparently not asked to—and therefore did not—consider the applicability of 8 U.S.C. § 241.13 to the petitioner's detention. *Id.* at 8 n.3. In *Sanchez v. Bondi*, 5:25-CV-2530 (C.D. Cal. Oct. 3, 2025), Dkt. No. 12, it appears the petitioner had received notice and an informal interview, *id.* at 5, thereby distinguishing that case from that of Ta. And in *Gutierrez v. Noem*, No. 5:25-CV-02668 (C.D. Cal. Oct. 17, 2025), although the Court's initial order denied relief, Dkt. No. 8, it appears that order was vacated and the Court subsequently granted relief, finding that the petitioner—like Ta, an immigrant who had been redetained—"ha[d] [] shown a likelihood of success on his claim for violation of Section 241.13." Dkt. No. 16 at 6.

Today, this Court must determine whether Ta is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is. In sum, the first *Winter* factor is met here under both of Ta's first two requests for habeas relief.

/ / /

/ / /

      ii. <u>The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.</u>

To establish the second *Winter* requirement, Ta must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Ta has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents argue that Ta's detention does not qualify as irreparable harm because he is subject to an unchallenged final order of removal and because the Government has "taken steps to effectuate his removal to his country of origin in the foreseeable future." Opp. at 11–12. But, as discussed above, the Government's discretion to issue removal orders is not at issue here. Instead, Ta argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Ta's ongoing detention of indeterminate length—which may lead to a deportation sometime in the future to an undetermined country—inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Thus, as this Court has already found that Ta has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Ta's constitutional rights—this Court finds the second *Winter* factor is met.

      iii. <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Ta's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Ta's favor. It is true, as Respondents note, that the Government has a strong interest in the enforcement of federal immigration law. *See*

Opp. at 12 (collecting cases). But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Respondents argue that their "public interest outweighs Petitioner's private interest" in this matter." Opp. at 12. But "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). In sum, the third and fourth *Winter* factors are met here.

### IV.    Conclusion

For the foregoing reasons, the Court hereby ORDERS that Ta's Motion for a Preliminary Injunction and Temporary Restraining Order is GRANTED IN PART. Ta's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable, and not redetain him without compliance with 8 U.S.C. § 241.4(*l*)(1) and 8 U.S.C. § 241.13(i);
2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;
3. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing; and

4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by November 17, 2025. The joint status report shall also address whether the habeas petition is moot.

IT IS SO ORDERED.

Dated: November 10, 2025.

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge